## ROGERS, A TAXPAYER, *v.* THE CITY OF CINCINNATI ET AL.

*Public officers — City engineer — Additional duties — Additional compensation — Board of rapid transit commissioners — Employment of engineer by such board — Section 4000-18, General Code (106 O. L., 286).*

1. A public officer cannot receive any additional compensation by reason of the fact that additional duties are imposed on him or assumed by him, unless the legislature has expressly provided that such additional compensation may be paid.

2. Under the provisions of Section 4000-18, General Code (106 O. L., 286), being the third section of the act providing for the creation of a board of rapid transit commissioners in cities, the board of rapid transit commissioners of the city of Cincinnati at its option may employ an engineer who is not holding a position in the public service of the city of Cincinnati and fix his compensation, or may designate the engineer of the city of Cincinnati as its engineer, but in so doing cannot allow the latter any additional compensation.

(Decided December 2, 1916.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. Crosley & Rogers,* for plaintiff in error.

*Mr. Charles A. Groom,* city solicitor, and *Mr. Saul Zielonka,* assistant solicitor, for defendants in error.

GORMAN, J.   The plaintiff, John C. Rogers, as a
taxpayer of the city of Cincinnati, requested the
solicitor of said city to bring an action against the
defendants to enjoin the payment to Frank S.
Krug of the sum of $9,000 per annum as engineer
for the rapid transit commission.   The solicitor
refused to bring the action, and thereupon plaintiff
in error brought suit against all the parties de-
fendant in error.

The petition sets out that Frank S. Krug was on
July 1, 1916, chief engineer of the subdepartment
of engineering of the department of public service
of the city of Cincinnati, at a fixed salary of $6,000
per annum; that prior to the first day of July, 1916,
said Krug had been appointed by the mayor to
his position as chief engineer, in the classified
service of the city of Cincinnati, in accordance with
the civil service law of the state; it was further
averred that the board of rapid transit commis-
sioners on November 29, 1915, had appointed or
designated said Krug as its engineer, and that he
had acted as its engineer until July 1, 1916, with-
out compensation additional to the salary provided
for him as chief engineer of the city; that on July
1, 1916, the said commission appointed or desig-
nated said Krug as its chief engineer, at a yearly
salary of $9,000, in addition to the $6,000 he was
then receiving as engineer of the city of Cincinnati
in the department of the director of public service,
making a total of $15,000 per annum to be paid
him for his services.

The answer of the defendants set up the ap-
pointment of the rapid transit commission under
the law and the ordinance, and the issuance of

bonds aggregating $100,000, the proceeds of which were placed at the disposal of the rapid transit commission, and, further, that the people at a special election voted in favor of a bond issue of $6,000,000 for the construction by the rapid transit commission of the rapid transit railway system and the loop as designated, and for the purchase and condemnation of the necessary land therefor; and also set up all the laws and ordinances affecting the rapid transit commission. The answer admitted the request made of the city solicitor by the plaintiff Rogers to bring suit and the refusal of the solicitor to commence the action; and further admitted practically all the averments of the petition.

The plaintiff filed a demurrer to this answer on the ground that it presented no defense to the plaintiff's petition.

This demurrer was overruled by the court below, and, the plantiff not desiring to plead further, judgment was entered dismissing the petition at the costs of the plaintiff. To that judgment plaintiff in error prosecutes this proceeding in error to reverse the judgment of the court of common pleas.

Two questions are presented by the record: First. Can the rapid transit commission employ engineers, clerks and employes and fix their compensation? Second. Can Frank S. Krug, while he is the engineer in the department of public service of the city of Cincinnati under fixed compensation of $6,000 per year, have his compensation increased by the board of rapid transit commissioners by the sum of $9,000 per year?

The decision in this case must rest upon the construction to be given to Section 4000-18, General Code, which is the third section of the act providing for the creation of a rapid transit commission, found in 106 Ohio Laws, 286. That section reads as follows:

"The board of rapid transit commissioners may employ clerks, engineers, superintendents and such other employes as may be necessary, provided, however, that the chief engineer of the subdepartment of engineering of the department of public service may be the engineer of said board and that the said subdepartment of engineering shall perform such engineering services as may be determined by said board. The superintendents, clerks, engineers, real estate experts, and attorneys of the board shall be in the unclassified service and all other employes shall be in the classified civil service of the municipality."

It is claimed by counsel for plaintiff in error that under this section of the law the rapid transit commissioners have no right to employ the engineer of the subdepartment of public service of the city of Cincinnati and pay him an additional salary. Plaintiff in error does not question the right or power of the rapid transit commissioners to appoint or designate this engineer, Mr. Krug, to be the engineer or chief engineer of the rapid transit commission, but he denies the power and authority of the commission to pay him any compensation in addition to that which he is to receive as the engineer of the subdepartment of public service of the city of Cincinnati, $6,000.

This court is of the opinion that the contention of the plaintiff in error is correct and that Mr. Krug cannot be compensated by the board of rapid transit commissioners in the sum of $9,000, or any other sum, in addition to the compensation which is paid to him for services rendered by him as engineer of the subdepartment of public service of the city of Cincinnati. The plain meaning of the language set out in Section 3 of this act is that the board of rapid transit commissioners is given the option or privilege, or right, of *employing* an engineer who is not in the employ of the city or of *accepting* the services of the city's engineer. When the services of the city engineer are accepted by this board of rapid transit commissioners by designating or appointing him as its chief engineer, then manifestly the plain intent and meaning of the statute is that he is to perform duties additional to those which he had theretofore been performing as engineer in the subdepartment of public service in the city of Cincinnati.

The language of the act is that the board "may *employ* clerks, engineers," etc., "provided, however, that the chief engineer of the subdepartment of engineering of the department of public service *may be* the engineer of said board."

This means that the board, if it does not see fit to employ an independent engineer, may call upon and designate the city engineer to be its chief engineer, or its engineer. The act does not provide that the engineer of the subdepartment of engineering of the department of public service *may be employed* by the rapid transit commission, but that he *may be the engineer* of said board; which clearly

indicates the purpose of the legislature not to permit him to be employed with additional compensation or in an independent capacity, but that the rapid transit commission finding the engineer of the city at hand could avail itself of his services.

Manifestly the legislature in so providing had in mind that the engineer of the city of Cincinnati because of his position would be more familiar with the topography of the city and the country through which this system is to be constructed, familiar with the streets and the location of the water mains, gas mains, sewers, conduits, and other underground utilities of the city; that he would have at hand the facilities, the assistants and the means of doing the work perhaps better than any independent engineer; and, furthermore, that because of his position and relation to the city of Cincinnati he could avoid any friction between an outside engineer, who might be employed by the rapid transit commission, and the engineer of the city under the department of public service.

Furthermore, the legislature no doubt had in mind in this provision that it would conduce to economy for the rapid transit commission to call upon the engineer of the city of Cincinnati to perform these services as its engineer and thereby save the compensation of an additional engineer.

It appears to us that by no stretch of language can this section be construed to mean that the rapid transit commissioners were to employ and allow additional compensation to an officer of the city of Cincinnati, who was then under salary under the civil service law and apparently amply paid for the services that he was rendering, in the absence

of any express language in the statute or some other law which would enable them to pay him an additional salary or compensation.

It is elementary law that municipal corporations have such powers and only such as are expressly granted by the legislature, or which are necessarily implied in order to carry into effect the express grants of power. It is the settled law of this state that a public officer elected or appointed cannot receive any additional compensation by reason of the fact that additional duties are imposed on him or assumed by him, unless the legislature has expressly provided that such additional compensation may be paid. (*Anderson* v. *Commissioners,* 25 Ohio St., 13; *Jones, Auditor,* v. *Commissioners,* 57 Ohio St., 189; *Swartz* v. *Commissioners,* 54 Ohio St., 669, and *Debolt* v. *Trustees of Cincinnati Tp.,* 7 Ohio St., 237.) There is no provision in this act, or in any other statute brought to our attention, whereby additional compensation may be paid to the engineer of the city of Cincinnati if he be designated or appointed by the board of rapid transit commissioners as its chief engineer.

In view of the fact that this third section of the act under consideration provides that the subdepartment of engineering of the city shall perform such engineering services as may be determined by the board of rapid transit commissioners, it would be just as reasonable to claim that this board would have the power and authority to give additional compensation to all the employes of the subdepartment of engineering of the city of Cincinnati as to give additional compensation to the chief engineer, Mr. Krug. Mani-

festly the legislature never intended, nor contemplated, when this law was passed — and the language will not bear such construction — that all the employes of the engineering department of the city, including the chief engineer, should have additional compensation for services which they might render to the rapid transit commission in addition to the duties they are called upon to perform under their appointment or employment. If the contention of the city solicitor were sustained by this court, it would in effect mean that the rapid transit commission might also give additional compensation to the city solicitor for services which he renders in advising the board and acting as its counsel. The board of rapid transit commissioners itself, when it appointed Mr. Krug, the first time, in November, 1915, as its engineer, placed no such construction upon this third section of the law as is now claimed for it. It appointed or designated him as its engineer without compensation, and it was only in July, 1916, more than six months after he had been acting as the engineer of this board, that it undertook to fix additional compensation for him.

It is further urged on behalf of the plaintiff in error that even if compensation can be given to the employes of the rapid transit commission, provision therefor would have to be made by the council of the city of Cincinnati, inasmuch as under Section 4214, General Code, it is provided that council shall by ordinance or resolution "determine the number of officers, clerks and employes in each department of the city government, and shall fix by ordinance or resolution their respective

salaries and compensation, and the amount of bond to be given for each officer, clerk or employe in each department of the government, if any be required. Such bond shall be made by such officer, clerk or employe, with surety subject to the approval of the mayor."

As to this contention the court is of the opinion that the act providing for the rapid transit commission (106 O. L., 286) gives the commission the authority to employ the necessary clerks, engineers, employes, etc.; that it is an exception to Section 4214, General Code, this act having been passed subsequently to the enactment of Section 4214 and being in apparent conflict therewith. We would hesitate to construe this law so as to hold that the council of the city of Cincinnati could hamper the action of the commission by neglecting or refusing to provide for the compensation of the clerks, employes, etc., who might be employed by this commission, or by providing them with insufficient compensation. We think that the fair construction of the act requires us to hold that the board of rapid transit commissioners has the power and authority to employ the necessary clerks, engineers and employes, and as an incident to their employment to fix their compensation, without being required to call upon the council of the city of Cincinnati to fix such compensation. In this particular instance it seems to us that Mr. Krug cannot be an independent employe of the rapid transit commission, as is claimed by the city solicitor, and at the same time act as the engineer in the subdepartment of public service of the city of Cincinnati. The very objection urged by the city

solicitor could be made, if Mr. Krug occupied the dual position of being under the direction and control of the director of public service in the engineering department of the city of Cincinnati, at a salary of $6,000 a year, and at the same time under the independent control of the rapid transit commission at a salary of $9,000. He would be, in effect, serving two masters, and perhaps under conflicting orders given by the director of public service and the board of rapid transit commissioners.

We hold that the only rational construction to be placed upon the language of Section 3 of the act under construction is that the board of rapid transit commissioners at its option may employ an engineer who is not holding a position in the public service of the city of Cincinnati and fix his compensation, or may designate the engineer of the city of Cincinnati as its engineer, but in so doing cannot allow him any additional compensation.

We do not deem it necessary to cite numerous authorities in support of the conclusions we have reached, but content ourselves with holding that the demurrer filed by the plaintiff in error to the answer of the defendants should have been sustained and not overruled; and for this reason the judgment of the court below is reversed, and the cause remanded for further proceedings.

*Judgment reversed, and cause remanded.*

JONES, E. H., P. J., and JONES, OLIVER B., J., concur.